***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn.
 ***********
At the hearing before the Deputy Commissioner, the following items were admitted into the record as:
 EVIDENCE
1. Medical Record for the Plaintiff from the Central Prison ER dated 10/3/98 (Defendant's Ex. 1).
2. Defendant's Response to Plaintiff's Request for Production of Documents (Plaintiff's Ex. 1).
3. Administrative Segregation Policies and Procedures for the NC Department of Correction (Plaintiff's Ex. 2).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was housed at Craven Correctional Institution. The events complained of allegedly occurred while plaintiff was housed at Central Prison in September and October 1998. At that time, plaintiff was assigned to work in the kitchen, where Mr. Jones was his supervisor.
2. Plaintiff alleges that he had requested protective custody from correctional staff and the assistant warden of Central Prison, but that the same was not provided. Plaintiff claims that he was assaulted and that the assault could have been prevented if he had been placed on protective custody as requested.
3. Plaintiff testified that in late September 1998, he heard inmates plotting to injure Correctional Officer McCleod, and that these inmates had hidden a homemade knife on the prison yard. That same day, plaintiff reported this to second-shift Sergeant Jenkins at or around 8 p.m. After he reported this inmate plot, plaintiff was called out of the dorm late at night to talk to the staff, and was not returned to the dorm until around 11:30 p.m., which is unusual. The other inmates got suspicious and started asking him why he was called out of the dorm.
4. As a result of plaintiff's report, the correctional staff was able to recover the homemade weapon and prevent any attempted use of it. This chain of events apparently lead to circulation of rumors that plaintiff was a "snitch," and inmates plotted to harm him.
5. Plaintiff acknowledged that he never had any direct threats made against him. He also testified that he could not identify any particular inmates who might be a threat against him. However, he was fearful that other inmates suspected him of being a snitch and would retaliate. The evidence shows this was a reasonable fear under the circumstances.
6. Plaintiff testified that he spoke with several staff members, including Mr. Jones, the kitchen supervisor, a sergeant from the tag plant, the chaplain, and Officer McCleod, and that he "begged" to be put in protective custody. Plaintiff also spoke with the Assistant Warden, requesting protective custody (known by policy as protective control). Per plaintiff's testimony, the Assistant Warden responded that if plaintiff went into protective control, he would "never walk the grounds of Central Prison again."
7. Lt. Brown, who had been working at Central Prison for over ten years, testified regarding the policy for protective control. For an inmate to be placed in protective control, the inmate must first make such a request. Next, the staff will investigate to determine if there is sufficient reason to place the inmate in protective control. Per Lt. Brown, fear of the general inmate population is not enough.
8. Lt. Brown did acknowledge that if the situation were as plaintiff testified, he should have been placed in protective control from the beginning.
9. The Department of Correction policies and procedures defines protective control as "the temporary reassignment of an inmate from the general population." The policy shows that the officer in charge must evaluate the circumstances to determine whether such segregation is necessary, and that "[t]he only purpose for protective control is the protection of the inmate when it is apparent that the inmate's life or well-being may be threatened if the subject remains in the general population."
10. Plaintiff testified that on the date in question, he was off work and had stayed in the dorm all day. He went to a movie, and as he was leaving, one inmate blocked his path, while another swung at him, hitting his backside. Plaintiff did not realize he had been cut until another inmate told him he was bleeding. Plaintiff thought he had been struck only by the inmate's hand. This agrees with the medicals, which show the injury was superficial and not serious.
11. The medical records show that on October 3, 1998, plaintiff was taken to the Central Prison Hospital emergency room after being "involved in an altercation with another inmate" and that plaintiff had sustained a 2.5 cm. superficial laceration to his right flank. The wound was cleaned, and no active bleeding was noted.
12. Plaintiff testified that within five to six days of the assault, he was transferred out of Central Prison to another prison unit.
13. Lt. Brown was not one of the officers whom plaintiff alleges he contacted to request protective control. None of those named individuals were called as witnesses by defendant. Lt. Brown testified that there was never an investigation regarding plaintiff's request. None of the prison staff to whom plaintiff alleges he talked about protective control testified or otherwise denied his allegations that he requested protective control.
14. While the prison staff cannot guarantee an inmate's safety, protective control offers a reasonable option for inmates who fear for their safety for legitimate reasons. An inmate who has acted as an informant or "snitch" may be a particular target for reprisal by other inmates.
15. Based upon the totality of the evidence, the Full Commission finds that plaintiff had a reasonably justified fear of reprisal from other inmates, because he had informed correctional staff of an inmate plot to injure one of their officers. Plaintiff's information effectively prevented the assault, and helped protect the correctional staff. Plaintiff made a reasonable request for protective control that should have been granted, or at the very least, investigated. Although defendant cannot guarantee an inmate's safety, under these circumstances, reasonable steps for protection could have been taken, and may have prevented the assault of October 3, 1998.
16. Fortunately for plaintiff, the injuries he sustained in the assault were minor and not life-threatening. There is no evidence plaintiff sustained any permanent injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown that in late September or early October 1998, he made a reasonable request for protective control to numerous named correctional staff at Central Prison. Based upon the totality of the circumstances, the prison staff was negligent in not taking his request more seriously and, at the least, investigating. As a reasonably foreseeable consequence of defendant's negligent failure to investigate this matter, plaintiff was not placed in protective control and was assaulted by another inmate on or about October 3, 1998, sustaining minor injury. Plaintiff is therefore entitled to recover damages from defendant for his personal injury, pursuant to N.C. Gen. Stat. § 143-291 et seq.
2. Considering the nature and extent of plaintiff's non-serious injury, and in the discretion of the Full Commission, a reasonable award for this claim is $100.00, pursuant to N.C. Gen. Stat. § 143-291 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant shall pay plaintiff the sum of $100.00 in damages.
2. No costs are taxed as plaintiff was permitted to file this civil action in forma pauperis.
This 10th day of August 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER